STANLEY GOFF (Bar No. 289564)
LAW OFFICE OF STANLEY GOFF
15 Boardman Place Suite 2
San Francisco, CA 94103
Telephone: (415) 571-9570
Email: scraiggoff@aol.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ERNST SOHN AND PATRICIA SOHN; | CASE NO.: |
|---|---|
| Plaintiffs, | **COMPLAINT FOR DAMAGES** |
| v. | 1. Violation of Plaintiffs' Fourteenth Amendment Rights 42 U.S.C §1983 (Use of Deception and Fabrication of Evidence in Judicial Proceedings) |
| | 2. Violation of Plaintiffs' First and Fourteenth Amendment Rights 42 U.S.C §1983 (Impairment of Parental Rights to Participate in their Care and Management and Familial Association) |
| LOS ANGELES COUNTY DEPARTMENT OF FAMILY AND CHILDREN SERVICES, NANCY RAZO, LORI ELMORE, NICOLE BRACKETT AND DOES 1-25; | 3. Violation of Plaintiffs' First and Fourteenth Amendment Rights 42 U.S.C §1983 (*Monell*) |
| Defendants. | **DEMAND FOR JURY TRIAL** |

1

Plaintiffs, demanding a jury trial, bring this action against Defendants LOS ANGELES COUNTY DEPARTMENT OF FAMILY AND CHILDREN SERVICES, NANCY RAZO, LORI ELMORE, NICOLE BRACKETT DOES 1-25; inclusive, for general, consequential, compensatory, punitive and statutory damages, costs and attorneys' fees resulting from defendants' unconstitutional and tortious conduct.

## I. PARTIES

1. Plaintiffs Ernst Sohn and Patricia Sohn were at all times relevant to this complaint, living in Los Angeles County, which is located within the Central District of California.

2. Defendant LOS ANGELES COUNTY is a legal entity established under the laws of the state of California with all the powers specified and necessarily implied by the Constitution and laws of the State of California that owns and operates the Los Angeles County Department of Family and Children Services.

3. Defendant Lori Elmore, was at all times relevant to this complaint employed as a Social Worker (Supervisor) employed by the Los Angeles County Department of Family and Children Services, when she engaged in the acts leading to the Plaintiffs' injuries. This Defendant is being sued in her individual capacity.

4. Defendant Nancy Razo, was at all times relevant to this complaint employed as a Social Worker employed by the Los Angeles County Department of Family and Children Services, when she engaged in the acts leading to the Plaintiffs' injuries. This Defendant is being sued in her individual capacity.

2

5. Defendant Nicole Brackett, was at all times relevant to this complaint employed as a Social Worker (Dependency Investigator) employed by the Los Angeles County Department of Family and Children Services, when she engaged in the acts leading to the Plaintiffs' injuries. This Defendant is being sued in her individual capacity.

6. Defendant Does 1-25 were employed at the time of the incident by Los Angeles County Department of Family and Children Services, whose identities and capacities are unknown at this time to the Plaintiffs. These Doe Officers are being sued in their individual capacities.

7. All Doe Defendants are being sued in their individual capacities.

8. All defendants acted under the color of law as it pertains to this complaint.

## II. JURISDICTION AND VENUE

9. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988 and 12132 and the Fourteenth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction over plaintiffs' claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred in Los Angeles County, which is located in this district.

## III. STATEMENT OF FACTS

11. The Plaintiffs and their three minor aged children (H.S., M.S. and C.S.) relocated to Los Angeles from the state of Virginia as the two daughters, H.S., now approx. 16, and M.S., now approximately 15, wanted to pursue acting.  M.S., especially did well, and landed some roles. C.S. is approximately 13 years old who has special needs (autistic and with Down's Syndrome).

12. M.S. presents with mental health needs, where her mother and father sought out therapists and psychologists throughout Southern California for her.  The teen was diagnosed with Borderline Personality Disorder, Factitious Disorder (she makes up false stories) and Oppositional Defiant Disorder. DCFS was working with the family as M.S. had been running away, being admitted on psychiatric holds and making allegations against her parents, including prior false sexual abuse claims against her father.

13. The Plaintiffs' family was in crisis. The family had been working with the DCFS workers voluntarily as their mentally ill daughter, M.S., was acting out, in which she had made sexual abuse allegations against her father which the DCFS determined to be **unsubstantiated**.

14. M.S. subsequently made these same sexual abuse allegations to her cheer coach and the cheer coach called the police. M.S. was interviewed and stated her father had been grabbing at her vagina over her clothing. M.S also accused her mother of hitting her with a stick on her arm. The teenager didn't have any marks or bruises on her, but showed the police a picture of an arm she said was hers in her cell phone with bruising. Both parents were arrested and the DCFS took all three of their minor children into protective custody without a removal warrant. The parents spent one night in jail and released the next day with all charges dismissed.

15. Detective Reddy of the Los Angeles Police Department who was assigned to the case had the parents released; she was familiar with the case. Later, this Detective would interview M.S. and H.S.

16. In her report, the Detective presented that the story M.S. provided to the Sheriffs regarding the alleged sexual abuse greatly differed from the account M.S. provided to the Detective. (Those trained in Forensic Sexual Abuse Interviewing know that this is an indicator that the sexual abuse likely did not occur.) The Detective was trained in Forensic Sexual Abuse Interviewing.

17. Detective Reddy's report also included M.S. stating that she made up the physical abuse allegations against her mother. M.S. stated she caused self-inflicting wound to her arm by ramming herself into a table. M.S. stated to the Detective that she felt she had to include physical abuse because she didn't think that making sexual abuse claims was good enough to get her out of her home. M.S. also stated to the Detective that she wanted her mother to leave her father over the sexual abuse allegations.

18. When interviewed by Detective Reddy, H.S. stated to the Detective that her parents had never abused anyone but that she did not like that her mother was strict. DCFS worker Nicole Bracket and Nancy Razo put forth minimal effort to obtain the Detective's report and did not inform the Juvenile Dependency Court of the Detective's report, until after the Juvenile Dependency Court ordered the DCFS to obtain the report, and then these defendants intentionally downplayed its contents and didn't educate the Judge as to the gravity of the report's contents.

19. Even though DCFS and its workers determined that the prior sexual abuse allegations made by M.S. to be unsubstantiated, and therefore had notice that M.S. had a history of making these types of false claims, DCFS through it workers DOES 1-25 crafted a petition stating that they found the sexual abuse allegations to be true and signed under the penalty of perjury that the contents of the petition were true.

20. Letters were submitted by numerous individuals from the professional community on behalf of the Plaintiffs as to how well they took care of C.S. and their girls, however these letters were intentionally not referenced in the DCFS reports.

21. The Plaintiffs provided to the DCFS the most recent psychological evaluation of M.S. which shows that the child suffered from various diagnosis, including one condition where lying is a main symptom. However, the DCFS did not include the psychological evaluation in their reports to the juvenile dependency court.

22. It is alleged based on knowledge and belief that the Detention Report created by DCFS and presented to the juvenile court was inaccurate and incomplete and intentionally withheld exculpatory information, and the Juvenile Court made orders based on this inaccurate and incomplete information as well as intentionally withheld exculpatory information.

23. It is alleged based on knowledge and belief it is a regular practice for DCFS to exaggerate information in the Detention Report and/or makes things up, to better guarantee that the Juvenile Court keep children detained.

24. It is alleged that the DCFS and Defendant Nicole Brackett failed to schedule a Forensic Sexual Abuse Interview in assessing the validity of M.S.'s sexual abuse allegations. In addition, the DCFS and Nicole Brackett failed to submit the findings of M.S.'s physical exam to the Juvenile Dependency Court, which took place soon after her removal.

25. It is alleged that there is a standard protocol that should be followed regarding sexual abuse allegations made by children, which may include video and/or audio recording and one way mirrors, using open ended questions and guarding against repeated interviews, so the child is not led to make false allegations and that DCFS failed to meet this standard when dealing with the sexual abuse allegations made by M.S.

26. It is alleged based on knowledge and belief that the DCFS (Dependency Investigator) Nicole Brackett has an important role and that is to let the court know whether there is evidence to support or refute the allegations in the petition, which includes presenting to the Court all exculpatory information.

27. It is alleged based on knowledge and belief at the juvenile dependency trial that DCFS (Dependency Investigator) Nicole Brackett testified that she didn't do an investigation at all, and that she testified that she always believes what children say.

28. It is alleged based on knowledge and belief that the DCFS (Dependency Investigator) Nicole Brackett provided inaccurate, untruthful and incomplete court reports to the Juvenile Dependency Court, knowing that these reports would be taken into evidence, knowing that these false and or inaccurate reports would be heavily relied upon by the juvenile court when making its orders whether to detain/ make whether to detain/make H.S., M.S., C.S. Dependents of the Court.

29. It is alleged based on knowledge and belief that DCFS social worker, Nancy Razo, intentionally mislead the juvenile court when she reported that Mother was calling M.S.'s group home incessantly, was harassing group home staff and was inappropriate on phone calls where they had to terminate Mother's phone calls and that based on these false representations to the Juvenile Court by Nancy Razo, the Plaintiffs' visits and phone calls with M.S. were ordered stopped.

30. It is alleged based on knowledge and belief that DCFS and Defendant Nancy Razo inaccurately and fraudulently reported to the juvenile court that C.S. operated on a 3-month old's level while in foster care, however when C.S. was observed interacting with his parents during their visits by an independent expert social worker, it was observed that C.S. could recite his mother's phone number, speak in complete sentences and answer his father's questions accurately.

31. C.S., who has Autism and Down Syndrome, had been placed in foster homes multiple times, where on at least one occasion, the Plaintiffs were not informed that their child was moved from his foster home placement.

32. Since he was taken from the Plaintiffs and placed in foster care, C.S. has appeared to be regressing behaviorally and cognitively. Health wise, since being in foster care, C.S. has lost a significant amount of weight and had blood in his stools. He was hospitalized with Dehydration on more than one occasion.

33. Also, the DCFS told the court that H.S. wasn't allowed to eat as her Mother wanted to keep her skinny.  The DCFS failed to let the court know that H.S. was prescribed a vegan diet by her doctor due to her stomach issues. The DCFS neglected to provide to the court the written note by her Doctor.

34. DCFS was aware that M.S. had movie roles that consisted of being a significantly abused child (physically and sexually).  However, the DCFS failed to notify the court of this.

35. One of the things the DCFS used against the Mother is that she didn't give M.S. psychotropic medication, but those diagnosed with Borderline Personality Disorder are not typically prescribed medication.

36. The Plaintiffs interviewed their son's teacher's aid and were told that she suspected that the foster parent, Cynthia Cole, wasn't changing C.S.'s diaper, and that he was sleeping in his urine and feces. The teacher's aid communicated to the parents that the teacher marked C.S.'s diaper with a symbol when the school day ended.  Per the aide, C.S. showed up to school the next day and had that same marked diaper on. The school provided this information to Nancy Razo. However, Nancy Razo or anyone else from DCFS did not notify the Juvenile Court of these abuse allegations.

37. C.S. was subsequently removed from the foster home of Cynthia Cole due to these physical neglect allegations and other physical abuse allegations. (C.S. also had bruising/marks to his body.) However, the Plaintiffs were never notified by Nancy Razo or anyone else from DCFS that their son had been removed and only found out that their son was gone from this foster placement when they arrived to visit him and was told that he was no longer there.

38. The Plaintiffs subsequently asked Nancy Razo what happened to their son (where was he moved), but Nancy Razo would not give them any information regarding the son's whereabouts, and told the Plaintiffs that they would have to get any information regarding their son from the court. (she did eventually tell the parents the phone number to where C.S. was replaced)

39. In addition to not informing the Plaintiffs that C.S. was moved from his foster placement, DCFS and Nancy Razo also didn't notify the Plaintiffs when M.S. was moved out of county and on at least one occasion DCFS and Nancy Razo did not notify the Plaintiffs when H.S. was moved from her foster placement. Moreover, regarding M.S.'s movement, it is believed that Nancy Razo lied in her report to the court stating the parents were notified and chose not to participate in a meeting regarding M.S.'s new placement out of county.

40. The DCFS and Nancy Razo also didn't follow protocol and procedure when moving M.S. out of county but told the court that proper protocol was followed.

41. A DOE DCFS worker lied to the court when they said the foster father wasn't monitoring the visit between the father and C.S. The social worker said that they had asked the foster parent to retrieve some paperwork and he needed to go upstairs to get it. However, this social worker left out this part when writing their report.

## IV. CAUSES OF ACTION

### FIRST CLAIM

**Violation of Plaintiffs' Fourteenth Amendment Rights 42 U.S.C §1983 TO BE FREE FROM JUDICIAL DECEPTION AND TO HAVE FAMILIAL ASSOCIATION)**

42. Plaintiffs incorporate herein by reference the preceding paragraphs 1-41 of this complaint as fully set forth herein.

43. That Plaintiffs had a right to not have their right to familial associations with their children interfered with based on deception and false evidence in judicial proceedings by the Defendants and that this interference with their familial associations with their children was in violation of their constitutional rights under the Fourteenth Amendment.

44. It is alleged based on knowledge and belief that the DCFS, Nicole Brackett and Nancy Razo provided inaccurate, untruthful and incomplete court reports to the Juvenile Dependency Court, knowing that these reports would be taken into evidence and that these false and or inaccurate reports would be heavily relied upon by the Juvenile Court when making its orders to keep the Plaintiffs' children detained in DCFS custody.

45. It is alleged based on knowledge and belief that Nancy Razo, intentionally mislead the Juvenile Court when she reported that Plaintiff was calling M.S.'s group home incessantly, was harassing group home staff and was inappropriate on phone calls where they had to terminate her phone calls and that based on these false representations to the Juvenile Court by Nancy Razo, the Plaintiffs' visits and phone calls with M.S. were ordered stopped.

46. It is alleged based on knowledge and belief that DCFS and Nancy Razo inaccurately and fraudulently reported to the Juvenile Court that C.S. operated on a 3- month old's level while in foster care, however when C.S. was observed interacting with his parents during their visits by an independent expert social worker, it was observed that C.S. could recite his mother's phone number, speak in complete sentences and answer his father's questions accurately.

47. It is alleged based on knowledge and belief that DCFS and Nicole Brackett did not inform the Juvenile Dependency Court of Detective Reddy's report, (which strongly indicated that the Plaintiffs had never abused H.S. or M.S.), until after the Juvenile Dependency Court ordered the DCFS to obtain the report, and then DCFS and Nicole Brackett intentionally mislead the Court by downplaying the exculpatory nature of the Detective's report. In addition, the DCFS and Nicole Brackett failed to submit the findings of M.S.'s physical exam to the Juvenile Dependency Court, which took place soon after her removal.

48. It is alleged based on knowledge and belief that even though DCFS and its workers had determined that the prior sexual abuse allegations made by M.S. were unsubstantiated, and therefore had notice that M.S. had a history of making false sexual abuse claims against her father, Nicole Brackett, fabricated in her petition to the Juvenile Dependency Court that they (DCFS) found the sexual abuse allegations made by M.S. to be true and signed under the penalty

of perjury that the contents of the petition were true. In addition, the DCFS and Nicole Brackett failed to submit the findings of M.S.'s physical exam to the Juvenile Dependency Court, which took place soon after her removal.

49. That letters were submitted by numerous individuals from the professional community on behalf of the Plaintiffs as to how well they took care of C.S. and their girls, however these letters were intentionally not referenced in any of the DCFS reports to the Juvenile Dependency Court either by Nicole Brackett or Nancy Razo.

50. That despite the Plaintiffs providing to DCFS psychological evaluations of M.S. which showed that the child suffered from various diagnosis, including one condition where lying is a main symptom, DCFS, Nicole Brackett and Nancy Razo intentionally omitted the psychological evaluations from their reports to the Juvenile Dependency Court.

51. It is alleged based on knowledge and belief that the Detention Report created by DCFS and Nicole Brackett and presented to the Juvenile Dependency Court was inaccurate and incomplete and intentionally withheld exculpatory information, and the Juvenile Court made orders based on this inaccurate and incomplete information as well as intentionally withheld exculpatory information.

52. Such actions were in conscious and reckless disregard of the risk of injury and under the circumstances there was no objectively reasonable basis for the defendants' actions.

53. All named Defendants acting under color of law, and with malice and oppression. Plaintiffs are therefore, also entitled to punitive damages.

## SECOND CLAIM
### Violation of Plaintiffs' First and Fourteenth Amendment Rights 42 U.S.C §1983
### IMPAIRMENT OF PARENTAL RIGHTS TO PARTICIPATE IN THE CHILDREN'S CARE AND MANAGEMENT AND FAMILIAL ASSOCIATIONS

54. Plaintiffs incorporate herein by reference the preceding paragraphs 1-53 of this complaint as fully set forth herein.

55. That Plaintiffs had a right to not have their right to familial associations with their children.

56. That these fundamental rights were interfered with based on the Defendants' refusal to inform the Plaintiffs of their intent to remove their children C.S., M.S. and H.S. from the foster homes that they were living in, to other locations and the change in their children's physical custody.

57. That this interference with the Plaintiffs' familial associations with their children, impaired their parental rights to participate in their children's care and management, in violation of their constitutional rights under the First and Fourteenth Amendments.

58. Such actions were in conscious and reckless disregard of the risk of injury and under the circumstances there was no objectively reasonable basis for the defendants' actions.

59. All named Defendants acting under color of law, and with malice and oppression. Plaintiffs are therefore, also entitled to punitive damages.

*Supervisor Liability Against Lori Elmore*

60. Plaintiffs incorporate herein by reference the preceding paragraphs 1-59 of this complaint as fully set forth herein.

61. That (SCSW) Lori Elmore failed to train, supervise and or control Defendant Nancy Razo and DOES 1-25.

62. That Lori Elmore's policy regarding the training and supervision of subordinate staff was so deficient that the policy itself was a repudiation of the Plaintiffs' constitutional rights, and was therefore the moving force of the constitutional violations suffered by the Plaintiffs.

63. That Lori Elmore "knew or reasonably should have known that the Nancy Razo was engaging in the intentional deception and fabrication of evidence to the Juvenile Dependency Court and the intentional impairment of the Plaintiffs' rights to participate in the care and management of their children while they were in foster care.

64. That Lori Elmore acquiesced to this conduct by not properly controlling, and or supervising Defendant Nancy Razo's conduct, and therefore Lori Elmore's conduct was a moving force" behind the Plaintiffs' constitutional violations.

**THIRD CLAIM**
**(Violation of Plaintiffs' First and Fourteenth Amendment Rights 42 U.S.C §1983 *Monell* – As to Los Angeles County)**

65. Defendant Los Angeles County and Does 1-64 deprived Plaintiffs of their rights, privileges, and immunities secured by the United States Constitution by creating polices, procedures, customs, usages and or practices, which were a moving force behind the violations of the Plaintiffs' constitutional rights pursuant to the First and Fourteenth Amendments, such as:

a. The custom of using trickery, duress, fabrication and or false testimony and or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the Court, causing interference with the Plaintiffs' rights, including those as to familial relations; and that this conduct has been taking place for the last 10 years.

b. By acting with deliberate indifference in implementing a policy of inadequate training, and or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the First and Fourteenth Amendments when performing actions related to child abuse and dependency type proceedings, and that this conduct has been taking place for the last 10 years.

66. As a direct result of Los Angeles County's actions and inactions, Plaintiffs' constitutional rights were violated, resulting in Plaintiffs' injuries.

## V. PRAYER FOR RELIEF

Plaintiffs pray for judgment against defendants as follows:

1. For compensatory damages and other special damages according to proof;
2. For general damages according to proof;
3. For punitive damages against all individual defendants according to proof;
4. The prejudgment interest at the legal rate according to proof;
5. For costs and reasonable attorneys' fees as provided by law; and
6. For such other relief as the Court may deem fit and proper.

## VI. JURY DEMAND

Plaintiffs demand a jury trial in this action.

LAW OFFICE OF STANLEY GOFF

Dated: October 8, 2020

　　　/s/ STANLEY GOFF　　　
STANLEY GOFF
Attorney for Plaintiffs